UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

James K.,[1]

                              Plaintiff,

     v.                                                                  1:25-CV-0097 (MJK)

Frank Bisignano,
Commissioner of Social Security

                              Defendant.

_____

Craig Polhemus Esq., for Plaintiff
Fergus J. Kaiser Esq., Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

## MEMORANDUM-DECISION & ORDER

James K. brought this action under the Social Security Act (42 U.S.C. § 405(g)) seeking judicial review of the Social Security Commissioner's final decision denying his application for benefits. (Dkt. 1.). Plaintiff consented to the jurisdiction of a Magistrate Judge. (Dkt. 4). Both parties filed briefs (Dkts. 11, 13) which the Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

---

[1] This Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial to protect his privacy.

## I. PROCEDURAL HISTORY

On September 8, 2019, James K. filed an application for Title II disability insurance benefits, alleging disability beginning August 28, 2012. (T. 11).[2] The Social Security Administration denied the claim initially on December 6, 2019, and again upon reconsideration on June 4, 2020. (*Id.*). James K. requested a hearing on August 3, 2020. (*Id.*) Administrative Law Judge ("ALJ") Michelle Marcus held a hearing on March 31, 2023. (T. 41-86). At the hearing, Attorney Ann Zagare represented James K. (T. 43). Both James K. and Vocational Expert Andrew Vaughn testified. (T. 11, 72-85). On June 23, 2023, the ALJ issued an unfavorable decision. (T. 8).

## II. GENERALLY APPLICABLE LAW

The Court need not repeat the five-step-sequential analysis that ALJs use to evaluate disability insurance and supplemental security income claims because both parties are familiar with the standard. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Petrie v. Astrue,* 412 F. App'x 401, 404 (2d Cir. 2011) (summary order). Likewise, the parties are both

---

[2] All page references are to the Administrative Transcript ("T.") and not the page numbers assigned by the CM/ECF pagination system.

familiar with the substantial evidence standard: Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

### III.  FACTS

The record includes the plaintiff's medical and mental health treatment records which the parties are familiar with. The Court will refer to the pertinent records and the hearing testimony in its analysis of the parties' claims, as appropriate.

### IV.  THE ALJ'S DECISION

Before reaching step one the five-step-sequential analysis, the ALJ determined that James K. "last met the insured status requirements of the Social Security Act on June 30, 2019." (T. 13).

Then, at step one, the ALJ found that James K. "did not engage in substantial gainful activity during the period from his alleged onset date of August 28, 2012, through his date last insured of June 30, 2019." (T. 13) (citations omitted).

At step two, ALJ Marcus held that James K. "had the following severe impairments: affective disorder, anxiety disorder, posttraumatic stress disorder (PTSD), sleep disorder, ocular migraines, vertigo,

cervicalgia, segmental and somatic dysfunction of the spine[, and] obesity" (T. 13). In contrast, ALJ Marcus found that James K.'s colon polyps, fatty liver, small hiatal hernia, gastroesophageal reflux, hyperlipidemia, high triglycerides, bruxism, hepatitis, back problems, temporomandibular joint disorder, and essential tremor were non-severe impairments. (T. 13-14).

At step three, the ALJ determined that James K. did not have a single impairment, or combination of impairments, that equaled the severity of impairments listed in 20 C.F.R Part 404, subpt. P, app. 1. (T. 14.).

Next, the ALJ discussed the "paragraph B" criteria. (T. 14-15). "To satisfy the paragraph B criteria," mental impairments "must result in one extreme limitation or two marked limitations in a broad area of functioning." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b) (cleaned up). The four broad areas of mental functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting and managing oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C).

Here, the ALJ found that James K. did not meet the "paragraph B" criteria. (T. 14). When making this finding, the ALJ determined that James K. had moderate limitations on his ability to: (1) understand, remember, or apply information; (2) interact with others; (3) maintain concentration, persistence, or pace; and (4) adapt and managing oneself. (T. 14-15).

The ALJ also considered the "paragraph C" criteria. (T. 15). The "paragraph C" criteria require a documented medical history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(c). Here, the ALJ noted that the "paragraph C" criteria were not met. (T. 15).

After this, the ALJ determined that James K. had the residual function capacity ("RFC") to perform:

> medium work as defined in 20 CFR 404.1567(c) except he must avoid all exposure to unprotected heights and never

climb ladders, ropes or scaffolds, and have no exposure to, or operation of, dangerous machinery. He requires a low-stress work setting, which is defined as follows: no work in the law enforcement field or in a jail/prison/corrections facility setting; can have occasional interaction with supervisors; can have occasional interaction with coworkers, provided there is no work on teams and individual interactions are superficial and not prolonged, which is defined as activities such as delivering interoffice mail or handing off a finished work product and similar interactions; can have no interaction with the public; no work in a supervisory capacity; in such a setting he can understand, remember, and carry out detailed, but not complex, instructions and work procedures with an adequate level of persistence and pace, and can adapt to changes in a routine work setting and can use appropriate judgment to make work-related decisions.

(T. 15).

To make this finding, the ALJ considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 416.920c. (T. 16).

At step four, the ALJ reasoned that James K. had no past relevant work and changed from the "younger individual age 18-49" category to the "closely approaching advanced age." (T. 19). The ALJ also reasoned that "transferability of skills is not material to the determination of disability[.]" (T. 19).

Finally at step five, the ALJ held that "considering" James K.'s "age, education, work experience and residual functional capacity, there

are jobs that exist in significant numbers in the national economy that" James K. "can perform." (T. 19). Accordingly, the ALJ determined that James K. is not disabled as defined by the Social Security Act. (*Id.*).

## V. ISSUES IN CONTENTION

James K. argues that this Court should reverse and remand the ALJ's decision because the ALJ: (1) failed to evaluate all the medical opinions in the record; (2) failed to perform the consistency analysis on the medical opinion of Dr. Robert Conciatori; and (3) failed to identify jobs that comply with his RFC. (Pl. Br. at 1-2; 6-21).[3] In opposition, the Commissioner argues that the ALJ (1) did not need to perform the supportability and consistency analysis on the medical reports because they were other medical evidence, not medical opinions; and (2) offered jobs that complied with James K.'s RFC. (Def. Br. at 6-11).

## VI. DISCUSSION

The Court denies James K.'s request to reverse the ALJ's decision on both grounds. First, the ALJ, contrary to James K.'s argument, did not need to perform the supportability and consistency analysis of Drs. Richards Ovens', Russell Denea's, Daniel Pheland's, Robert Conciatori's

---

[3] The Court addresses James K's first two issues together because they are inextricably linked together.

medical progress notes, and Nurse Practitioner ("NP") Karen Bedell's retrospective medical opinion. Second, the ALJ properly determined that James K. could perform the jobs the vocational expert opined that he could do.

### A. The ALJ did not need to perform the supportability and consistency analysis on James K.'s medical reports.

The Court rejects James K.'s arguments that the ALJ did not perform the supportability and consistency analysis on five reports. Under the regulations, ALJs need only perform the supportability and consistency analyses on medical opinions. They need not do so on other medical evidence. Here, James K. argues that the ALJ should have performed the supportability and consistency analysis on other evidence. Not so. As a result, the Court rejects this argument.

For starters, the ALJ erred when she failed to discuss Drs. Denea's, Pheland's, and NP Bedell's medical reports. As a reminder, ALJ must consider "other evidence" when a "claimant's impairment(s) does not meet or equal a listed impairment." 20 C.F.R. § 404.1520(e). Other medical evidence is "evidence that is not objective medical evidence or a medical opinion[.]" 20 C.F.R. § 404.1513(3). This includes "judgments about the nature and severity of" claimants' "impairments,"

8

claimants' "medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* ALJ Marcus did not discuss, let alone cite, Drs. Denea's, Pheland's, and NP Bedell's medical reports. *See* (T. 13-20). And that was error. But that error was harmless. *See Loucks v. Kijakazi*, 21-1749, 2022 WL 2189293 at * 2 (2d Cir. June 17, 2022) (summary order) (Finding that Courts may affirm an ALJ's decision with procedural error if "a searching review of the record assures" the Court "that the substance of the regulations was not traversed.") (cleaned up).

Medical opinions are statements "from a medical source about what" claimants "can still do despite" their impairments and whether they "have one or more impairment-related limitations or restrictions in the" specifically listed "abilities." 20 C.F.R. § 404.1513(2). Under the current regulations, ALJs are required "to articulate how persuasive" they find "each medical opinion and must explain how" they "considered the supportability and consistency factors for a medical source's medical opinion." *Lisa A. S. v. Kijakazi*, 21-CV-78 (BKS/CFH), 2022 WL 4494189 at *2 (N.D.N.Y. Sept. 28, 2022). "Other medical evidence is not subject to this articulation requirement." *Id.* Medical reports are

9

considered other evidence, so ALJs need not perform the supportability and consistency analysis on medical progress reports. *See* 20 C.F.R. §404.1513(3); *see also Tyler W. v. Comm'r of Soc. Sec.*, 22-CV-01345 (CFH), 2024 WL 1075209 at *12 (N.D.N.Y. Mar. 12, 2024) (Finding that the ALJ did not err when they did not perform the supportability or consistency analysis on medical progress notes.).

    James K.'s argument that the ALJ should have performed the supportability and consistency analyses on Drs. Ovens', Denea's, Pheland's, and Conciatori's, records is wrong. To start, the documents submitted by Drs Ovens', Denea's, Pheland's, and Conciatori's do not address what James K. is capable of doing. *See* (T. 531-37, 1023-28, 1146-51, 1374). As counsel's brief makes crystal clear: the documents diagnose James K.'s impairments and describe the progress he's made. *See* (T. 531-37, 1023-28, 1146-51, 1374). That is not enough to be considered a medical opinion under the existing regulations. *See Michael H. v. Saul*, 20-CV-417 (MAD), 2021 WL 2358257, at *6 (N.D.N.Y. June 9, 2021) (determining that a medical progress note did not constitute a medical opinion because, it did "not discuss what [the p]laintiff is still capable of doing."); *see also* 20 C.F.R. §§ 404.1513(a)(3),

416.913(a)(3) (describing "other medical evidence" as including "judgments about the nature and severity of your impairments"). And because these four notes are not considered medical opinions, the ALJ "was not required to evaluate the persuasiveness" of the medical reports. *Lisa A. S.,* 2022 WL 4494189 at *2.

James K.'s separate argument that the ALJ needed to perform the supportability and consistency analyses on Dr. Ovens' May 6, 2013 report is unpersuasive. "The ultimate conclusion of whether an individual is disabled or unable to work is reserved to the Commissioner and conclusory opinions by others are entitled to no particular weight." *Vogelsang v. Comm'r of Soc. Sec.,* 657 F. Supp. 3d 450, 464 (S.D.N.Y. 2023) (cleaned up). "Because such evidence is inherently neither valuable nor persuasive," ALJs are "under no obligation to provide any analysis about how" they considered such evidence in" their "determination or decision." *Tyler W.,* 2024 WL 1075209 at *11. Dr. Oven's May 6, 2013 report only notes that James K. is totally disabled. (T. 566). Thus, ALJ Marcus, contrary to James K.'s argument, was not required to address the supportability or consistency of Dr. Oven's disability determination. *See, e.g., Rachel D. v. Comm'r of*

11

*Soc. Sec.*, 573 F. Supp. 3d 892, 900 (W.D.N.Y. 2021) (holding that a statement by a medical source that the plaintiff was "disabled" or "unable to work" is an opinion on an issue reserved to the Commissioner and, therefore, the ALJ was not required to consider that statement).

Beyond that, James K's argument as to Dr. Conciatori's report cannot carry the day. *See* (Pl. Br. at 17). In his report, Dr. Conciatori's notes that James K. cannot work in the sheriff's department or any other law enforcement agency. (T. 542). Dr. Conciatroi further reports that he "believes" James K. would be "capable of doing other types of work that" has "nothing to do with law enforcement." (*Id.*). Finally, he concludes that the "overall level of" James K.'s "disability is partial, mild to moderate." (*Id.*). This report is not entitled to deference because disability findings and the work individuals can do are within ALJs' exclusive province. 20 C.F.R. § 404.1520b(c)(3)(i).

The ALJ was also not required to perform the supportability and consistency analysis on NP Karen Bedell's medical opinion. Medical "evidence that does not provide additional information about the claimants functioning during the relevant time period, but instead relates to" their "functioning at some later point in time, need not be

12

considered" by ALJs. *David C. v. Comm'r of Soc. Sec.*, 659 F. Supp. 3d 354, 362 (W.D.N.Y. 2023). Here, it is unclear what time period NP Bedell's medical opinion relates to. The medical records indicate that the treating relationship between NP Bedell and James K. began in March 2020—*after* the date last insured. (T. 13); *see generally* (Exhibit 25 F, T. 1146-1190). This means that any information provided in NP Bedell's medical opinion needed to relate to August 28, 2012 to June 30, 2019. *See* (T. 13). But to answer the question "on what date were the limitations you found above first present, NP Bedell answered "unknown." (T. 1151). So, ALJ Marcus, and the Court, cannot tell whether the medical opinion relates to the relevant time period. As a result, the ALJ was not required to analyze NP Bedell's medical opinion.

Any counterargument James K. can make, on the merits, would be unconvincing. The Court cannot guess that because James K. has been dealing with issues since August 28, 2012, that the evaluation from NP Bedell must relate back to the relevant time period. The opinion must *expressly* relate to the relevant time period. *Cf. Erma I. v. Kijakazi*, 21-CV-896, 2022 WL 17337792 at *9 (D. Conn. Nov. 30 2022) (remanding a

13

case back to the ALJ when the retrospective opinion submitted to the Appeals Council expressly related to the disability timeframe.). And as noted above, NP Bedell's medical opinion does not identify what time period it relates to.

    James K.'s best counterargument— a procedural counterargument that the Commissioner's argument on this score is a *post hoc* rationalization—is also unconvincing. Reviewing Courts "may not accept appellate counsel's *post hoc* rationalizations" for agency action. *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999). But balanced against this principle, is the reviewing court's ability to "glean the rationale of an ALJ's decision" from the record. *Cichocki v. Astrue,* 729 F.3d 172, 178 fn. 3 (2d Cir. 2013). While these principles may seem to conflict here, the latter wins out. In her decision, ALJ Marcus notes "I also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. 404 1520c." (T. 16) (cleaned up). Looking at the SSA regulation, it notes ALJs "will assess and make" findings about claimants' "residual functional capacity based on all the *relevant* medical and other evidence in" a claimant's "record[.]" 20 C.F.R. 404 1520c (emphasis added). With NP

Beddell's medical opinion as it is, there was no way for ALJ Marcus to determine if the medical information was relevant. In fact, the Court can glean that the ALJ decided to exclude NP Bedell's medical opinion because the treating relationship between NP Bedell and James K. began the year *after* he was last insured. As a result, this is not a *post hoc* rationalization; it is the Court exercising its power to search the record and confirm "that the substance of the regulations was not traversed." *Loucks,* 2022 WL 2189293 at *2 (cleaned up).

\* \* \*

In sum, the ALJ was not required to perform the supportability and consistency analyses on the four reports that James K. identified because they are not medical opinions. Similarly, ALJ Marcus was not required to perform the supportability and consistency analyses on NP Bedell's medical opinion because the opinion does not expressly state that it relates back to the relevant time period.

### B. The ALJ identified jobs James K. can complete, so the Court will not disturb the administrative decision on appeal.

The Court rejects James K.'s argument that the ALJ did not identify jobs that complied with his RFC. Here, the ALJ, persuaded by

15

the moderate limitations on James K.'s ability to interact with others, offered three jobs that require the lowest level of human interaction. Thus, these jobs complied with James K.'s RFC.

The upshot of James K.'s argument is that he cannot perform work as a Preparation Cook, DOT # 317.687-010, Mail Clerk, DOT # 209.687-026, or Dishwasher, DOT. 318.687-010. (Pl. Br. at 19-21). This argument falls flat. Each of these jobs has a "People Rating" of 8. *See* DOT # 318.687-010 *Kitchen Helper*, 1991 WL 672755; DOT # 317.687-010 *Cook Helper*, 1991 WL 672752; DOT # 209.687-026 Mail Clerk, 991 WL 6711813. A "People Ratings of 8, according to the Department of Labor's Dictionary of Occupational Titles . . . means that these jobs require the lowest possible level of human interaction in the workplace." *Rucker v. Kijakazi*, 48 F.4th 86, 92 (2d Cir. 2022). These job offerings are in line with the ALJ's RFC determination which limits James K. to "occasional interaction with supervisors" and "coworkers, provided there is no work on teams and individual interactions are superficial and not prolonged." (T. 15).

James K. did not proffer evidence of what work he could do during the relevant time period. At step four, the Commissioner determines

whether the claimant has the RFC to perform his past work. *Petrie*, 412 F. App'x at 404. But importantly, "the claimant bears the burden of proof as to the first four steps." *Id.* (cleaned up). At the administrative hearing, James K. testified about his *current* volunteer work, But all of this information is after the 2012-2019 time period. (T. 51-57) In other words, all the information is after James K.'s date last insured. (T. 13). On appeal James K. does not marshal any evidence to indicate what level of human interaction he could tolerate during the relevant time period. *See* (Pl. Br. at 3, 19-20). So, without any evidence to the contrary, the ALJ determined that James K. can only perform People 8 jobs. The Court need not determine whether this was error because James K. does not challenge this finding on appeal. *See* (Pl. Br. at 19-20).

James K. cannot challenge the ALJ's step five determination. After finding that the James K. can only perform jobs with the lowest possible human contact, the ALJ limited James K. to level 8 jobs. This is in line with the RFC. James K.'s counterargument is unavailing because it conclusory. In essence, James K.'s argument is that because there is *some* human interaction the jobs are outside the RFC. Not so.

17

The ALJ was under no obligation to make a disabling determination as to James K.'s ability to interact with others when James K. did not provide any evidence of the interactions he could undertake during the relevant time period. *See generally* (Pl. Br.).

*Rucker* does not compel a different outcome. In that case, the Second Circuit rejected the Commissioner's argument that level 8 jobs would not burden the plaintiff, who has social limitations that prevent her from being employed, because they require low level human interactions. *Rucker*, 48 F.4th at 92. Specifically, the *Rucker* court focused on the ALJ's decision to discount moderate limitations on the plaintiff ability to "accept instructions and respond appropriately to criticism from supervisors" and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." *Id.* at 91. Here that is not the case. ALJ Marcus found that Drs. M. Marks and R. Abueg's findings generally persuasive. (T. 18). Dr. Marks opined that James K. has moderate limitations on his ability to accept instructions and respond appropriately to criticism from supervisors and get along with coworkers or peers without distracting them or exhibiting behavior extremes. (T. 94). Differently, Dr. Abueg opined that James K. has

moderate limitations on his ability to accept instructions and respond appropriately to criticism from supervisors but no significant limitations on his ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes. (T. 109). Synthesizing this information, the ALJ noted that James K. "may have some problems with intense and prolonged social interactions but is capable of relating to others in basic work interactions[.]" (T. 19). Factoring this in—unlike the ALJ in *Rucker*,—ALJ Marcus determined that People Rating 8 jobs complied with James K.'s RFC. As a result, this case is factually distinguishable from *Rucker*. Thus, that case does not compel a different finding.

* * *

To end, the ALJ, persuaded by the moderate limitations on James K.'s ability to interact with other in the workplace, provided James K. with three jobs that required the lowest level of human interaction. That was legally sufficient. In that same vein, *Rucker* does not compel a determination that every claimant with moderate limitations on their social interaction skills cannot work. In sum, the ALJ's decision to offer the three jobs it did was proper.

## VII. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. 11) be **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. 13) be **GRANTED**; and it is further

**ORDERED**, that the decision of the Commissioner be **AFFIRMED,** and Plaintiff's Complaint (Dkt. 1) be **DISMISSED IN ITS ENTIRETY.**

Dated: September 3, 2025

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge